IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 22-cv-03191-NYW-NRN

PATRICK ANINIBA,

    Plaintiff,

v.

AURORA PUBLIC SCHOOLS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss" or "Motion"), [Doc. 29, filed April 4, 2023], filed by Defendant Aurora Public Schools ("Defendant" or "APS").  Plaintiff Patrick Aniniba ("Plaintiff" or "Mr. Aniniba") has opposed the Motion ("Response"), [Doc. 30], and Defendant has replied, [Doc. 31]. The Court finds that oral argument will not materially assist in the disposition of the Motion to Dismiss.  Upon review of the Parties' briefing, the entire docket, and the applicable case law, this Court respectfully **GRANTS** the Motion to Dismiss.

## BACKGROUND

The following factual background is based on the allegations in the First Amended Complaint and Jury Demand ("First Amended Complaint"), which are taken as true for purposes of the Motion to Dismiss.  *See* [Doc. 26, filed March 28, 2023].  Mr. Aniniba started working for Defendant—a public school district in Aurora, Colorado—in July 2015.  [*Id.* at ¶¶ 8–10].  Mr. Aniniba is of Nigerian ancestry.  [*Id.* at ¶ 16].  At the time of his termination on April 13, 2021, he had been working for eight months as a Cross Categorical Paraeducator at Hinkley High School

("Hinkley"), which is part of APS. [*Id.* at ¶ 10]. At Hinkley, Plaintiff's supervisor was Assistant Principal Emily Nickerson ("Ms. Nickerson"). [*Id.* at ¶ 11].

Plaintiff alleges that, on or about October 4, 2020, he "objected" to an APS paraprofessional referring to a student of color as an "animal" and/or "monkey." [*Id.* at ¶ 12]. Following Plaintiff's complaints about these comments, APS allegedly "began isolating Plaintiff and engaging in heightened monitoring of him." [*Id.* at ¶ 14]. The only example of this treatment alleged by Plaintiff in the immediate aftermath of his objection is that unspecified colleagues "who previously had always made themselves available to Plaintiff suddenly became 'unavailable' or 'too busy' to communicate with him." [*Id.* at ¶ 15].

Between late January and early March 2021, Plaintiff alleges that he was photographed without his permission by other APS paraprofessionals; that APS reassigned him to a different classroom to "monitor his work performance"; and that Ms. Nickerson falsely stated that he "was less engaged than his colleagues because his camera was turned off," even though his colleagues were permitted to leave their cameras off. [*Id.* at ¶¶ 17–19]. Mr. Aniniba further alleges that Ms. Nickerson falsely claimed that he had been "sleeping on the job." [*Id.* at ¶ 19].

On March 4, 2021, APS issued Plaintiff a written reprimand. [*Id.* at ¶ 20]. On March 31, 2021, APS issued Plaintiff a second written reprimand and suspended his employment. [*Id.* at ¶ 22]. Plaintiff received a third written reprimand on April 13, 2021, which allegedly falsely stated that Plaintiff was photographing or recording other employees without their permission, even as they were not disciplined for doing the same to him. [*Id.* at ¶ 24]. Plaintiff was subsequently terminated and "led out of the APS building publicly after being falsely accused of horrific and unprofessional behavior in the classroom in the presence of students, teachers, and staff." [*Id.* at

2

¶¶ 26–27].[1]  Plaintiff alleges that his discipline and termination were based on his protected characteristics (his Nigerian ancestry) and done in retaliation for his protected activity (complaining about another paraprofessional's racist comments about a student).  *See, e.g.*, [*id.* at ¶ 28].

Plaintiff filed suit on December 9, 2022.  [Doc. 1].  Several months later, he filed the operative First Amended Complaint, [Doc. 26], which mooted a prior motion to dismiss, [Doc. 14; Doc. 27].  In the First Amended Complaint, Mr. Aniniba brings one claim for national origin discrimination under Title VII of the Civil Rights Act of 1964 ("Count I"), and one claim for retaliation, also under Title VII ("Count II").  *See* [Doc. 26 at 5–7].  Plaintiff seeks monetary damages, including lost wages and benefits, as well as punitive damages, among other forms of relief.  *See* [*id.* at 7–8].  Defendant has filed the Motion to Dismiss, [Doc. 29], attaching the reprimands Plaintiff received.[2]  The Motion is now ripe for resolution.

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nevertheless, a

---

[1] The Court takes the First Amended Complaint's reference to a May 13, 2021, termination date, [Doc. 26 at ¶ 26], as a typographical error in light of the references to a termination date of April 13, 2021, found in other allegations, [*id.* at ¶ 10], and the reprimand itself, [Doc. 29-3 at 2]. Whether the termination date was April 13 or May 13 does not affect the Court's analysis.

[2] The Court may consider the written reprimands without converting the Motion to Dismiss into a motion for summary judgment because they are referenced in the First Amended Complaint, they are central to Plaintiff's claims that his treatment violated Title VII, and their authenticity is undisputed.  *See Cnty. of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002); *see also* [Doc. 30 at 4, 6 (Plaintiff citing reprimands without disputing their authenticity)].

3

plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claims "across the line from conceivable to plausible"). The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

The Motion to Dismiss contends that both Counts I and II should be dismissed. The Court discusses each claim in turn.

**I.    National Origin Discrimination**

APS argues that Count I, which alleges discrimination on the basis of Plaintiff's Nigerian ancestry, does not state a claim because Plaintiff's allegations do not support an inference that his termination was discriminatory. *See* [Doc. 29 at 5]. Plaintiff responds that "an inference of discrimination can arise from an employer's favoritism toward a similarly situated employee who is not part of the protected class." [Doc. 30 at 5]. In that regard, Plaintiff focuses on allegations that Ms. Nickerson "reprimanded Plaintiff for allegedly taking photographs and/or recording his colleagues without their permission, even though his colleagues were not disciplined for having photographed Plaintiff without his permission just 2.5 months earlier." [*Id.* at 6]. APS replies, in part, that Ms. Nickerson's written reprimands reveal that Plaintiff's discipline was based on

4

additional conduct which other similarly situated individuals did not engage in. *See* [Doc. 31 at 2–3].

Although the Tenth Circuit "do[es] not mandate the pleading of any specific facts in particular, a plaintiff must include enough context and detail to link the allegedly adverse . . . action to a discriminatory or retaliatory motive with something besides sheer speculation." *Al Ghareeb v. Bd. of Trs. at Univ. of N. Colo.*, 849 F. App'x 746, 749 (10th Cir. 2021) (quotation omitted and omission in original). The Court respectfully concludes that the First Amended Complaint cannot meet that bar. At the outset, Plaintiff's allegations that his discipline and termination were "motivated by discriminatory . . . animus," *see, e.g.*, [Doc. 26 at ¶ 28], are "not entitled to the assumption of truth because they are entirely conclusory," *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). Likely recognizing that, Plaintiff focuses his Response on the argument that his allegations indirectly give rise to an inference of discrimination based on disparate treatment of similarly situated individuals at Hinkley. *See* [Doc. 30 at 5–6].

To that end, Plaintiff relies primarily on *Ibrahim v. Alliance for Sustainable Energy, LLC*, 994 F.3d 1193 (10th Cir. 2021). In *Ibrahim*, the Tenth Circuit explained that "[e]mployees are similarly situated when they share a supervisor or decision-maker, must follow the same standards, and engage in comparable conduct." *Id.* at 1196 (citations omitted). Although Plaintiff argues in his Response that Ms. Nickerson "was involved in all relevant incidents" as "the identical decision-maker," [Doc. 30 at 6 (emphasis omitted)], the Court respectfully agrees with Defendant that the allegations at issue, even construed in Plaintiff's favor, do not adequately allege that other APS employees were similarly situated to Plaintiff. As Defendant correctly observes, "Plaintiff alleges no fact about his coworkers—including whether they are also Paraprofessionals or whether they have the same supervisor as Plaintiff—that would allow the Court to 'compare the relevant

5

employment circumstances.'" [Doc. 29 at 6 (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997))]; *see also, e.g.*, [Doc. 26 at ¶ 24 (alleging merely that "Plaintiff's *colleagues* had not been disciplined by *the Defendant* for having taken photographs and/or recordings of Plaintiff without his permission" (emphasis added))]. Simply put, Plaintiff's allegations are too vague to support a reasonable inference of discrimination based on disparate treatment of similarly situated individuals. That is so even without considering the additional grounds for discipline identified in the written reprimands Plaintiff received. *See* [Doc. 29-1; Doc. 29-2; Doc. 29-3]. Count I is **DISMISSED without prejudice**.

## II.    Unlawful Retaliation

A prima facie case of retaliation requires a plaintiff to demonstrate "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (footnote omitted). As to the third requirement, APS argues in its Motion to Dismiss that Plaintiff's retaliation claim falls short because the First Amended Complaint does not give rise to an inference of causation that could connect Plaintiff's objections about another paraprofessional's discriminatory comments with his own discipline or termination. *See* [Doc. 29 at 8–10]. Defendant cites Tenth Circuit authority that a gap greater than three months between protected activity and adverse action is insufficient, on its own, for purposes of inferring retaliatory causation based on temporal proximity. *See* [*id.* at 8]; *see also, e.g.*, *Bekkem v. Wilkie*, 915 F.3d 1258, 1271 (10th Cir. 2019). Here, Defendant notes, the protected activity allegedly occurred on or around October 4, 2020, whereas Plaintiff's termination did not occur for at least six months, and Plaintiff has no additional allegations supporting causation. *See*

6

[Doc. 29 at 8–9]. Plaintiff responds that he has alleged that he "began experiencing harassment, isolation and heightened monitoring" following his protected activity, citing allegations about general changes in late 2020 and specific incidents throughout 2021. *See* [Doc. 30 at 7–8]. Plaintiff also suggests that the timing of his objection renders it "entirely plausible" that his discipline and termination formed "part of the same series of retaliatory conduct that began shortly after Plaintiff engaged in his protected activity." [*Id.* at 9]. However, the Court concludes that the allegations in the Complaint do not support Plaintiff's argument.

The Court assumes without deciding that Plaintiff has sufficiently alleged that he engaged in protected activity for purposes of Title VII retaliation, and accordingly does not reach Defendant's argument that he has not. *See* [Doc. 29 at 7–8]. As relevant to indirectly showing causation by proximity, the First Amended Complaint includes the following allegations set just after the alleged protected activity in October 2020.

> 13. In the wake of Plaintiff's complaint to APS regarding the discriminatory remarks, APS—directly or through its agents—began harassing Plaintiff and subjecting him to unequal terms and conditions of employment, as compared with his similarly situated colleagues who did not share his protected characteristics and/or who were not known to have engagaged [sic] in the protected activity of having objected to discrimination.
>
> 14. Almost immediately after Plaintiff engaged in his October 4, 2020 protected activity, APS began isolating Plaintiff and engaging in heightened monitoring of him; Plaintiff observed this change in the way that APS was treating him beginning in October 2020 and continuing throughout the balance of his employment at APS.
>
> 15. As an example of the isolation to which Plaintiff was subjected beginning in October 2020, multiple colleagues at APS who previously had always made themselves available to Plaintiff suddenly became "unavailable" or "too busy" to communicate with him.

[Doc. 26 at ¶¶ 13–15]. Plaintiff's generic allegations of "unequal terms and conditions of employment," "isolat[ion]," and "heightened monitoring," [*id.* at ¶¶ 13–14], without more, are insufficiently specific to give rise to an inference of retaliation based on mistreatment following

protected activity. *See Al Ghareeb*, 849 F. App'x at 749; *Bekkem*, 915 F.3d at 1271–72. That conclusion is bolstered by the sole example of this alleged pattern of conduct being Plaintiff's "colleagues at APS" no longer acting as friendly toward him. *See* [Doc. 26 at ¶ 15]. Of course, as Defendant points out, "Plaintiff's co-workers did not make the decision to terminate him." [Doc. 29 at 9].

Plaintiff's specific and dated allegations of events and occurrences related to his treatment by APS throughout 2021, leading up to his termination, further undermine the vague allegations about his treatment immediately following the alleged protected activity. *See* [Doc. 26 at ¶¶ 16–27]. So does Plaintiff's attempt to illustrate that mistreatment in his Response solely by referencing incidents starting in late January 2021. *See* [Doc. 30 at 7–8]. The First Amended Complaint thus fails to give rise to a reasonable inference of causation, sufficient to support the retaliation claim, because it does not allege with sufficient specificity any adverse action taken by Plaintiff's supervisors in the months immediately following his alleged protected activity, nor does it suggest a pattern of mistreatment culminating in adverse action that would otherwise render this a "close-proximity case." *See Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1217 (10th Cir. 2003). The argument that the timing of Plaintiff's employment supports a retaliatory inference, [Doc. 30 at 9], is likewise "sheer speculation." *Al Ghareeb*, 849 F. App'x at 749 (quotation omitted). And Plaintiff points to no additional specific and non-conclusory allegations in the First Amended Complaint that support causation. *Cf. O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001). Count II is **DISMISSED without prejudice**.

### III.   Leave to Amend

Defendant seeks dismissal with prejudice. *See* [Doc. 29 at 10; Doc. 31 at 5]. Plaintiff states that he "would request leave to further amend his pleading" if the Court dismisses the First

8

Amended Complaint. [Doc. 30 at 9]. "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). Because Defendant fails to establish that the defects identified in this Order cannot be cured by amendment, the Court will give Plaintiff an opportunity to seek leave to amend, no later than **November 3, 2023**, after a robust meet and confer with Defendant.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1) Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 29] is **GRANTED**;

(2) The First Amended Complaint [Doc. 26] is **DISMISSED without prejudice**; and

(3) Plaintiff may seek leave to file an additional pleading, attaching a redlined copy of the proposed pleading, on or before **November 3, 2023**.

DATED: October 18, 2023          BY THE COURT:

_____
Nina Y. Wang
United States District Judge